```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION

 4
       PALMA,                        )  CV-09-3117-JF
 5                                   )
                    PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 6                                   )
               VS.                   )
 7                                   )  APRIL 30, 2010
       WASHINGTON MUTUAL, INC.,      )
 8     ET AL,                        )
                                     )  PAGES 1-15
 9                  DEFENDANT.       )

10     _____

11                  TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE JEREMY FOGEL
12                UNITED STATES DISTRICT JUDGE

13

14     A P P E A R A N C E S:

15

16     FOR THE PLAINTIFF:   LAW OFFICE OF KENNETH GRAHAM
                            BY:  CHARLES GRASSO
17                          171 MAYHEW WAY, STE 208
                            PLEASANT HIL, CA 94523
18

19

20     FOR THE DEFENDANT:   ADORNO YOSS ALVARADO & SMITH
                            BY:  THEODORE BACON
21                          633 W. FIFTH ST, STE 1100
                            LOS ANGELES, CA 90071
22

23

24

25     OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR, CRR
                                CERTIFICATE NUMBER 13185
```

```
 1    SAN JOSE, CALIFORNIA              APRIL 30, 2010
 2                P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  DO WE HAVE COUNSEL ON THE
 6    PALMA MATTER?
 7              MR. BACON:  YES, YOUR HONOR.  ON THE
 8    PALMA MATTER.
 9              THE COURT:  COULD I GET YOUR APPEARANCE.
10              MR. BACON:  THEODORE BACON.
11              MR. GRASSO:  GOOD MORNING, YOUR HONOR.
12    CHUCK GRASSO APPEARING ON BEHALF OF THE PLAINTIFF.
13              THE COURT:  OKAY.  WELL, THIS IS THE
14    BANK'S MOTION TO SET ASIDE DEFAULT JUDGMENT.  AND
15    INITIALLY WE ARE UNDER RULE 60 NOT RULE 55 BECAUSE
16    THERE IS A DEFAULT JUDGMENT RATHER THAN SIMPLY A
17    DEFAULT.
18              AND ORDINARILY IT WOULD BE A PRETTY EASY
19    CALL HERE, BUT I'M JUST COMPLETELY BEFUDDLED AS TO
20    THE BANK'S CONDUCT.  IT'S NOT AS IF YOU ARE DEALING
21    WITH A PRO PER LITIGANT WHO DOESN'T HAVE RESOURCES,
22    THIS IS ONE OF THE BIGGEST BANKS IN THE WORLD.  AND
23    THIS DEFAULT SAT THERE FOR MONTHS WITH NO RESPONSE.
24              PART OF IT IS EXPLAINED AND PART OF IT
25    ISN'T.  THERE'S ABOUT A FIVE MONTH GAP WHERE IT'S
```

1   CLEAR THAT THE BANK IS AWARE THERE'S BEEN A DEFAULT
2   AND THEN THERE'S A DEFAULT JUDGMENT ENTERED IN
3   JANUARY AND WE DON'T GET A MOTION FILED UNTIL
4   MARCH.  AND IT'S JUST FRANKLY INCONCEIVABLE TO ME
5   THAT THIS COULDN'T HAVE BEEN DONE SOONER.
6           SO I GUESS I NEED TO HEAR A LITTLE BIT
7   BEYOND WHAT'S IN THE BANK'S PAPERS.
8           COUNSEL?
9           MR. BACON:  YES, YOUR HONOR.
10          THE PROBLEM WITH THIS IS THAT OUR
11  OFFICE -- WE WERE DELIVERED -- WHEN WE FIRST FOUND
12  OUT ABOUT THIS IN THE OCTOBER TIME FRAME WHEN THE
13  MOTION FOR ENTERING DEFAULT WAS ALREADY PENDING,
14  WAS THAT OUR OFFICE REPRESENTS JP MORGAN CHASE, AND
15  WE WERE SENT THE DOCUMENT BY BANK OF AMERICA.
16          AND IT WAS REALLY JUST AN EXTREMELY
17  DIFFICULT TIME TO FIND OUT TWO FACTS, TWO MAIN
18  AREAS OF FACTS.  ONE AREA OF FACT THAT WAS
19  DIFFICULT TO FIND OUT IS WHO HAS RESPONSIBILITY FOR
20  THIS LOAN.  AND UNTIL WE FOUND THAT OUT I WAS IN A
21  POSITION OF NOT KNOWING IF THIS IS SOMETHING THAT
22  JP MORGAN NEEDS TO JUMP IN AND DEFEND BANK OF
23  AMERICA ON THIS MATTER OR NOT.
24          AND TYING DOWN WHO WERE THE PEOPLE AT JP
25  MORGAN THAT MADE THAT DECISION AND WHO ARE THE

```
1    PEOPLE AT BANK OF AMERICA WHO MADE THAT DECISION IS
2    A DIFFICULT TIME BECAUSE I WOULD GET A HOLD OF
3    SOMEBODY AND THEY WOULD SAY, YOU NEED TO TALK TO
4    SOMEBODY ELSE, THEN WE WOULD GET THAT THEY WEREN'T
5    IN.  WE WOULD CALL THEM BACK THEN THEY WOULD SAY,
6    THIS IS THE PERSON TO TALK TO AND THAT PERSON WOULD
7    BE ON THE -- THIS WAS IN NOVEMBER, THE THANKSGIVING
8    HOLIDAY.
9              THEN WE GOT THE INFORMATION FROM BANK OF
10   AMERICA AND TRIED IT FIND OUT, SO WHAT HAPPENED
11   HERE, WHY DID THIS -- WHY DIDN'T WE JUST GET A
12   NOTICE OF DEFAULT FROM OUR ENTRY OF DEFAULT ON
13   CHASE OF THIS MOTION IN OCTOBER IF THIS THING --
14   WHEN WAS THIS THING SENT OVER TO CHASE.
15             THEN WE FIND OUT WITH CHASE, GOING
16   THROUGH THE VARIOUS OFFICES OF CHASE, WERE THOSE
17   SENT FIRST TO NEW YORK THEN OVER TO THE WEST COAST
18   TO US TO DETERMINE WHERE THE BALL WAS DROPPED IN
19   CONNECTION WITH THAT, AND THAT'S THE PART SET FORTH
20   IN THE DECLARATION.
21             AT THAT POINT THEN I DID MAKE A CALL OVER
22   TO PLAINTIFF'S COUNSEL, BUT I'M NOT IN A
23   POSITION -- I LEFT A MESSAGE BECAUSE I NEVER GOT A
24   CALL BACK.  BUT I LEFT A MESSAGE SAYING, LOOK, I
25   DON'T KNOW WHO IS THE RESPONSIBILE PARTY IN TERMS
```

1   OF CHASE OR BANK OF AMERICA, AND THEN I DON'T KNOW
2   WHAT FACTS ARE, A SET ASIDE DEFAULT.  I KNOW YOU
3   WERE AT THE HEARING.  AND AT THAT POINT, THE TIME
4   TO OPPOSE THE HEARING HAD ALREADY PASSED.
5           SO THEN WE WENT ABOUT THE ATTITUDE OF
6   SAYING, LOOK, WE DETERMINED NOW THAT THIS IS A LOAN
7   THAT CHASE IS RESPONSIBLE FOR BUT WE'VE GOT TO GET
8   ALL THE PIECES IN PLACE ABOUT WHAT HAPPENED BETWEEN
9   THE TIME THAT BANK OF AMERICA WAS INITIALLY SERVED
10  WITH THE COMPLAINT, SOMETIME IN JULY, AND CHASE
11  GETS THIS NOTICE OF DEFAULT IN OCTOBER.
12          IT WASN'T UNTIL ABOUT MID-DECEMBER THAT
13  AFTER GOING TO FIND WHO IS THE PERSON WHO TAKES
14  CARE OF SERVICE AT BANK OF AMERICA THAT WE LEARNED
15  THAT IT HAD BEEN SERVED BACK IN JULY ON -- WE
16  LOOKED ON THE COURT WEBSITE TO SEE IF IT WAS SERVED
17  ON BANK OF AMERICA IN JULY BUT WHAT WAS THE DELAY
18  BETWEEN JULY AND OCTOBER, AND THAT'S WHEN WE FOUND
19  OUT THE E-MAIL THAT SHOWS IT WAS SENT FROM BANK OF
20  AMERICA OVER TO CHASE.
21          AND SO THEN WHEN WE GOT THAT INFORMATION
22  TOGETHER WE WERE ABLE TO PIECE THAT PART OF IT, WE
23  WERE ABLE TO PIECE TOGETHER THE SECOND PART OF IT.
24          NOW WE ARE IN JANUARY AND WE'VE GOT THE
25  SECOND PART OF IT TOGETHER TO SHOW WHAT HAPPENED

1   WITH ALL OF THIS.  THEN WE FINALLY HAD ENOUGH FACTS
2   AFTER THE HEARING IN JANUARY.  AGAIN, THE CHRISTMAS
3   HOLIDAYS AND THE NEW YEARS HOLIDAYS WE FINALLY GOT
4   ALL THE PEOPLE TO SWEAR TO THESE DECLARATIONS TO
5   PUT ALL THE DOCUMENTS TOGETHER.
6           IT WAS AN ABSOLUTE INCREDIBLE MESS TO TRY
7   TO FIGURE OUT.  I CAN TELL YOU THAT WE NOW HAVE IT
8   FIGURED OUT FOR ANY FUTURE ISSUES, BUT IT WAS A
9   SITUATION OF THE BANK UNDER ANY OF THOSE
10  CIRCUMSTANCES OF INTENDING NOT TO ANSWER OR IT WAS
11  A COLOSSAL MESS OF LOGISTICS TO FIND OUT THAT
12  INFORMATION.
13          THE COURT:  WELL, OKAY, SO THAT GETS ME
14  TO JANUARY, THEN YOUR MOTION IS NOT FILED UNTIL
15  MARCH.
16          MR. BACON:  BECAUSE ONCE I GOT THE
17  MOTIONS TOGETHER, AND I WILL TELL YOU FRANKLY,
18  YOUR HONOR, WHAT I HAD WAS A DIFFICULTY WITH BANK
19  OF AMERICA INDICATING AND CHASE INDICATING WHO IS
20  RESPONSIBLE AND GETTING ALL OF THEIR DECLARATIONS
21  AND ALL THE EXACT FACTS PUT TOGETHER IN THOSE
22  DECLARATIONS.
23          AND I DID CALL IN JANUARY IMMEDIATELY
24  AFTER I HAD SEVERAL CALLS, I SPOKE TO PLAINTIFF'S
25  COUNSEL IN JANUARY SAYING, NUMBER ONE, I'M TRYING

1   TO PUT THIS TOGETHER, I'M GOING TO FILE THE MOTION
2   BUT I AM WILLING TO OBVIOUSLY COVER ANY OF THEIR
3   DEFAULT -- THE COSTS INCURRED IN TERMS OF
4   PROCEEDING WITH THIS.  I TALKED WITH THEIR
5   DIRECTORY AND OFFERED TO DO THAT, OFFERED IF THEY
6   WOULD BE WILLING TO SET ASIDE.
7              AND YOU KNOW, WITH ALL DUE RESPECT, I
8   UNDERSTAND.  HE DIDN'T RESPOND AND WAS NOT REQUIRED
9   TO DO SO.  I RESPECTED HIS DECISION AT THAT STAGE.
10             AND AT THAT TIME I WAS DESPERATELY TRYING
11  TO GET THE DUCKS IN A ROW AND KEEP PLAINTIFF
12  INFORMED, TELL HIM WHAT'S HAPPENING AND PUT THIS
13  THINGS ALL TOGETHER.  IT WAS -- IT WAS A VERY, VERY
14  DIFFICULT LOGISTICAL PROBLEM, BUT IT'S NOT A
15  SITUATION WHERE THE EFFORT WAS NOT THERE TO TRY TO
16  GET SOMETHING TOGETHER THAT THE EFFORT WAS NOT
17  THERE TO TRY TO COMMUNICATE WITH PLAINTIFF'S
18  COUNSEL.
19             THE COURT:  IT HELPS TO KNOW THAT YOU DID
20  TALK TO HIM, AND I WILL HEAR FROM HIM IN A SECOND.
21             BUT I'M SITTING HERE, YOU KNOW, THE COURT
22  HAS BEEN HEARING THESE CASES BY THE BUCKET LOAD FOR
23  THE LAST YEAR OR SO EVER SINCE THE HOUSING
24  COLLAPSE.  AND GENERALLY, IT'S THE PLAINTIFFS WHO
25  ARE EXPLAINING WHY THEY DIDN'T FIND THEIR PAPERWORK

1   AND WHY THEY DIDN'T DO THINGS, AND USUALLY COUNSEL
2   FOR THE BANKS ARE VERY UNSYMPATHETIC.  AND THERE'S
3   A LOT OF IRONY HERE TO SAY THE LEAST.
4           MR. BACON:  I APPRECIATE THAT,
5   YOUR HONOR.  I REALLY DO.
6           AND I CAN ONLY TELL YOU IN MY OFFICE
7   ALONE WE'VE HANDLED ABOUT 1200 OF THESE CASES.
8   THIS IS THE ONLY TIME I'VE HAD A SITUATION WHERE WE
9   HAVEN'T BEEN ABLE TO, THE TRANSMITTAL FROM THE BANK
10  THAT ORIGINALLY WRITES THE LOAN TO THE BANK THAT IS
11  THE SERVICER HAS NOT GONE THROUGH AND WE HAVEN'T
12  GOT THE THING TIMELY FILED ON THOSE SITUATIONS.
13          IT'S LITERALLY ONE OUT OF --
14          THE COURT:  WELL, IS THERE -- ONE LAST
15  QUESTION BEFORE I HEAR FROM PLAINTIFF'S COUNSEL.
16  IS THERE SOME REASON WHY AT SOME POINT ALONG THE
17  WAY THE BANK DIDN'T CONTACT THE COURT OR COUNSEL
18  DIDN'T CONTACT THE COURT?
19          I MEAN, WHEN WE GOT THIS REQUEST FOR
20  DEFAULT I REMEMBER IT VERY WELL BECAUSE IT WAS SO
21  UNUSUAL, THE IMMEDIATE THOUGHT WAS, THIS CAN'T BE.
22  YOU KNOW, THE BANK OF AMERICA USUALLY RESPONDS WHEN
23  IT'S SUED.
24          AND WE ACTUALLY CHECKED TO MAKE SURE THAT
25  THE AGENT FOR SERVICE OF PROCESS WAS THE RIGHT ONE

1   AND THAT THE SERVICE WAS COMPLETELY IN ORDER.  WE
2   DID AN INDEPENDENT CHECK ON THIS BECAUSE WE DIDN'T
3   WANT TO DO SOMETHING INAPPROPRIATE.  WE NEVER HEARD
4   BOO FROM THE BANK UNTIL THE MOTION WAS FILED IN
5   MARCH.  AS FAR AS WE KNEW THIS WAS JUST SOMETHING
6   THAT HAD BEEN COMPLETELY IGNORED.
7           SO OBVIOUSLY AT THE END OF THE DAY THE
8   COURT WANTS TO DO A JUST AND RIGHT THING BUT THE
9   IRONY IS DRIPPING FROM THIS PARTICULAR FACT
10  PATTERN.
11          COUNSEL, DO YOU WANT TO BE HEARD?
12          MR. GRASSO:  YES, YOUR HONOR.  COULD I
13  SPEAK TO THIS ONE ISSUE BEFORE PLAINTIFF SPEAKS?
14          THE COURT:  ONE MORE ISSUE, YOU MEAN?
15          GO AHEAD.
16          MR. BACON:  IF THERE'S A FAULT IN THAT,
17  IT'S MINE PERSONALLY BECAUSE I DID NOT FEEL THAT I
18  HAD THE POSITION TO CONTACT THE COURT UNTIL I HAD
19  ALL THE FACTS TOGETHER.
20          I CONTACTED PLAINTIFF'S COUNSEL, AND
21  FRANKLY I LOOKED AT MY STUFF AND SAID WHEN AM I
22  GOING TO TELL THE COURT.  I DON'T KNOW WHO THE
23  SERVICER IS OR THAT BANK OF AMERICA IS THE LOAN.  I
24  DON'T KNOW WHOSE LOAN THIS REALLY IS, AND I DON'T
25  KNOW THE FACTS OF WHAT HAPPENED.  AND I DIDN'T KNOW

1    WHAT COULD POSSIBLY COMMUNICATE TO THE COURT.
2             IF I LOOK BACK ON THIS WITH HINDSIGHT
3    MAYBE I NEEDED TO DO SOMETHING DIFFERENT AND MAYBE
4    THERE NEEDS TO BE A SANCTION OR ISSUE AGAINST ME
5    FOR NOT DOING THAT AND IF THAT IS, I ACCEPT
6    RESPONSIBILITY FOR IT.
7             THE COURT:  HINDSIGHT IS WONDERFUL, AND
8    YOU KNOW PERHAPS WHAT YOU COULD HAVE DONE IS SAY,
9    I'M STILL INVESTIGATING TO DETERMINE WHO THE PROPER
10   RESPONDER IS, BUT PLEASE DON'T DO ANYTHING DRASTIC
11   LIKE ENTER A DEFAULT JUDGMENT.  BUT I UNDERSTAND
12   WHAT YOU SAID AND I APPRECIATE YOUR CANDOR.
13            COUNSEL, GO AHEAD.
14            MR. GRASSO:  YES, YOUR HONOR.
15            I THINK COUNSEL HAS REALLY FOCUSED ON ONE
16   ISSUE OF THE COMPLAINT ITSELF WHICH THEY DIDN'T
17   RESPOND TO OR SORT OF CHOSE TO NOT DO UNTIL THREE
18   MONTHS AFTER IT WAS SERVED AT WHICH POINT THEY KNEW
19   THERE WAS A MOTION TO ENTER A DEFAULT AT THAT
20   POINT.
21            THERE WAS NO CONVERSATION, THERE WAS NO
22   CORRESPONDENCE OR THEY HAD EVEN ASKED FOR A
23   CONTINUANCE OR ASKED FOR ADDITIONAL TIME TO FILE AN
24   ANSWER.  THERE WAS NO COMMUNICATION WHATSOEVER.
25            SO THEY WERE SERVED TWICE.  THERE WAS AN

1  INITIAL COMPLAINT AND THERE WAS AN AMENDED
2  COMPLAINT.  THERE WAS A MOTION TO ENTER DEFAULT
3  WHICH THEY WERE SERVED ON.  I NEVER HEARD BACK FROM
4  THEM AT ALL ON THAT.  THAT WAS IN OCTOBER.
5           THEY ARE CLAIMING IT TOOK SEVERAL MONTHS
6  TO FIGURE OUT HOW TO RESPOND TO THAT.  THEY NEVER
7  TOLD THE COURT, ASKED THE COURT FOR TIME.  THERE
8  WAS A CASE MANAGEMENT CONFERENCE THAT THEY COULD
9  HAVE ATTENDED AND ADDRESSED ON ISSUES AT THAT
10 POINT.
11          ANOTHER TWO OR THREE MONTHS PASS AND
12 THERE'S A MOTION FOR ENTRY OF DEFAULT JUDGMENT
13 WHICH THE COURT ENTERED, STILL NO APPEARANCE.  CASE
14 MANAGEMENT CONFERENCE SCHEDULED FOR THE SAME DAY,
15 NO APPEARANCE ON THAT EITHER.
16          THEN WE STILL HADN'T HEARD FROM OPPOSING
17 COUNSEL.  WE ONLY HEARD FROM THEM RIGHT BEFORE THE
18 MOTION TO VACATE WHICH WAS IN MARCH.  WE ARE IN
19 APRIL NOW AND WE ARE ALMOST A YEAR FROM THE TIME OF
20 THE INITIAL PLEADING.
21          AND I SEE THAT THROUGH THEIR PAPERS THAT
22 THERE'S REALLY A DECISION NOT TO ADDRESS THE ISSUE,
23 NOT TO COME FORTH AND AT LEAST ASK FOR TIME OR THEY
24 DECIDED TO POSTPONE IT AND FIGURE OUT WHAT HAPPENED
25 MAYBE.  BUT IT WAS A WILLFUL DECISION NOT TO FOLLOW

1     THE PROCEDURES WHICH EVERYBODY ELSE HAS TO FOLLOW
2     IN THESE MATTERS.
3             THE COURT:  WELL, I GUESS JUST SO THAT I
4     SPREAD MY GIVING A HARD TIME AROUND A LITTLE BIT.
5     I DON'T THINK IT'S NECESSARILY APPROPRIATE EVEN IN
6     A CASE WHERE THE DEFENDANT HAS NOT STEPPED UP TO
7     THE PLATE TO GIVE THE PLAINTIFF A WINDFALL.  AND I
8     WOULD HOPE THAT THERE WOULD BE SOME WILLINGNESS AT
9     THIS POINT, NOW THAT WE'VE GOT BOTH SIDES PRESENT,
10    TO AT LEAST SEE IF THERE'S A WAY TO RESOLVE THE
11    CASE WITHOUT IT BEING AN ALL OR NOTHING
12    PROPOSITION.
13            THE COURT HAS A LOT OF LEEWAY IN TERMS OF
14    THIS MOTION.  THE COURT CAN DENY IT OR GRANT IT ON
15    CONDITIONS OR IMPOSE SOME TYPE OF SANCTIONS OR
16    REIMBURSEMENT.
17            MR. BACON:  I WILL INDICATE THAT I
18    ALSO -- I DIDN'T THINK IT WAS APPROPRIATE IN THIS
19    HEARING, BUT I WANTED TO HEAR COMMENT.  I TOLD
20    MR. GRAHAM AS SOON AS I GOT CONTACT WITH HIM
21    INITIALLY ON THE MESS, THERE IS CERTAIN PROCEDURES
22    THAT I WAS WILLING TO INVESTIGATE IMMEDIATELY IN
23    CONNECTION WITH IT.  SO THAT IT IS NOT AN ALL OR
24    NOTHING SITUATION AND STILL WE ARE WILLING TO
25    PURSUE THOSE.

1       THE COURT:  I WOULD HOPE SO BECAUSE I
2  THINK THAT'S THE LEAST THE BANK COULD DO, BUT I
3  THINK THAT MAY BE A MORE EQUITABLE WAY OUT OF THIS.
4       LET ME MAKE A SUGGESTION TO YOU.  I'M
5  GOING TO SUBMIT THE MOTION.  I WOULD LIKE TO HAVE
6  YOU COME BACK IN ABOUT 45 DAYS AND I'M GOING TO
7  DIRECT YOU TO CONFER WITH EACH OTHER.
8       IF YOU NEED TO USE THE COURT'S MEDIATION
9  PROGRAM OR ONE OF OUR MAGISTRATE JUDGES, PLEASE LET
10 ME KNOW AND WE WILL BE HAPPY TO PROVIDE THAT
11 RESOURCE FOR YOU.
12      BUT I THINK THIS IS SOMETHING THE PARTIES
13 CAN PROBABLY WORK OUT.  AND I WOULD HOPE THE
14 PLAINTIFF'S SITUATION COULD BE ADDRESSED, GIVEN ALL
15 THAT'S GONE ON IN THE LAST YEAR, IN A WAY THAT'S
16 APPROPRIATE.
17      SO I WILL SEE YOU THE 18TH OF JUNE IF YOU
18 ARE BOTH AVAILABLE AT 10:30.  AND I WILL NOT ISSUE
19 A DECISION ON THE MOTION UNTIL THEN.
20      MR. GRASSO:  YOUR HONOR, COULD I MAKE ONE
21 MORE POINT?
22      THE COURT:  YES, SIR.
23      MR. GRASSO:  I ALSO THINK IT'S IMPORTANT
24 THAT THERE WAS A FINALITY OF JUDGMENT HERE AND IT'S
25 A MATTER OF, YOU KNOW, OF PREJUDICE AS WELL IN

13

1   TERMS OF THIS HOUSE HAS BEEN IN DURESS FOR THIS
2   CLIENT AND THERE WAS A POINT WHERE IT SHOULD HAVE
3   BEEN ADDRESSED BEFORE THIS.
4           THE COURT:  I COMPLETELY AGREE.  I THINK
5   MY COMMENTS MADE THAT CLEAR.
6           I'M SAYING IT'S RATHER DRASTIC TO,
7   IRRESPECTIVE OF THE MERITS OF THE CASE, TO SIMPLY
8   SAY WELL, BECAUSE BASICALLY THE BANKS WERE NOT TOO
9   BIG TO FAIL BUT TOO BIG NOT TO FAIL IN THIS
10  PARTICULAR CASE.
11          I THINK SOMETHING NEEDS TO BE DONE FOR
12  MS. PALMA BUT I THINK IT'S BETWEEN COUNSEL TO
13  FIGURE OUT WHAT THAT SOMETHING IS.  AND I'M GOING
14  TO HANG ON TO THIS FOR 45 DAYS SO YOU CAN DO THAT.
15          THANK YOU.  I WILL SEE YOU THE 18TH OF
16  JUNE.  MATTER SUBMITTED.
17          MR. BACON:  THANK YOU, YOUR HONOR.
18          (WHEREUPON, THE PROCEEDINGS IN THIS
19  MATTER WERE CONCLUDED.)
20
21
22
23
24
25

14

1
2
3
4          **CERTIFICATE OF REPORTER**
5
6
7
8          I, THE UNDERSIGNED OFFICIAL COURT
9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR
10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
12   CERTIFY:
13          THAT THE FOREGOING TRANSCRIPT,
14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND
15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS
16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
18   TRANSCRIPTION TO THE BEST OF MY ABILITY.
19
20
21
22                         _____
                           SUMMER A. CLANTON, CSR, CRR
23                         CERTIFICATE NUMBER 13185
24
25